KNUT S. JOHNSON (CSB 125725)
LAW OFFICE OF KNUT S. JOHNSON
1010 Second Avenue, Suite 1850
San Diego, California 92101
(619) 232-7080 (Phone)
(619) 232-7324 (Fax)
knut@knutjohnson.com

Attorney for MARTIN ORTIZ-CASTANEDA

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES,<br><br>   Plaintiff,<br><br>vs.<br><br>MARTIN ORTIZ-CASTANEDA,<br><br>   Defendant. | CASE NO. 08 cr 1170-L<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTIONS:**<br>**(1) FOR DISCOVERY;**<br>**(2) TO SEVER COUNTS;**<br>**(3) TO FILE FURTHER MOTIONS.**<br><br>**Time: 2:00 p.m.**<br>**Date: May 19, 2008** |

## I.

## FACTS

These facts are based only on the Complaint in this case, and are recited only for the purpose of these motions. The statements contained herein are not admissions, and in many cases the defendant disputes these facts.

The government has indicted Mr. Ortiz-Castaneda for 10 counts:

1. Assault on a Federal Officer (18 USC § 111(a)(1) (Count 1)
2. Bringing in Illegal Aliens for Financial Gain (8 USC § 1324(a)(2)(B)(ii)) (Counts 2, 4, 6, and 8)
3. Bringing in Aliens Without Presentation (8 USC § 1324(a)(2)(B)(iii)) (Counts 3, 5, 7, and 9)
4. Attempted Entry After Deportation (8 USC § 1326(a) and (b)) (Count 10)

1    According to the complaint in this case, On March 15, 2008 Border Patrol
2 Agents performing "linewatch" duties in Imperial Beach spotted five suspected
3 illegal aliens. When the Agents commanded the aliens to get on their knees, all
4 complied but one. That person, later identified as the defendant, fled. The
5 defendant then allegedly threw a rock at Agent Griffin and scuffled with him.
6    After his arrest the defendant made a statement. The material witnesses
7 identified the defendant as the foot guide.
8    Mr. Castaneda has received no discovery thus far.

## II.

## MR. ORTIZ-CASTANEDA IS ENTITLED TO DISCOVERY

11    This motion is not limited to those items that the prosecutor knows of, but
12 rather includes all discovery that is in the custody, control, care, or knowledge
13 of any "closely related investigative [or other] agencies", under <u>United States v.</u>
14 <u>Bryan,</u> 868 F.2d 1032, 1036 (9th Cir. 1989). Counsel for Mr. Ortiz-Castaneda
15 believes that numerous agencies have been involved in the investigation of this
16 case. Mr. Ortiz-Castaneda therefore moves for discovery of the following:
17    (1)    **Mr. Ortiz-Castaneda's Statements**. Under Fed. R. Crim. P. 16
18 (a)(1)(A) the defendant is entitled to disclosure of: all copies of any written or
19 recorded statements made by the defendant; the substance of any statements
20 made by the defendant that the government intends to offer in evidence at trial;
21 any recorded testimony of the defendant before the grand jury; any response by
22 the defendant to interrogation; the substance of any oral statements that the
23 government intends to introduce at trial; any written summaries of the
24 defendant's oral statements contained in the handwritten notes of the
25 government agent; any response to any Miranda warnings that were given to
26 the defendant (See <u>United States v. McElroy,</u> 697 F.2d 459 (2d Cir. 1982)); and
27 any other statements by the defendant that are discoverable under Fed. R. Crim.
28 P.16(a)(1)(A). The Advisory Committee Notes as well as the 1991 amendments

to Rule 16 make it clear that the Government must reveal all the defendant's statements, whether oral or written, regardless of whether the Government intends to introduce those statements at trial;

(2) **Reports of Scientific Tests or Examinations.** Pursuant to Fed. R. Crim. P.16(a)(1)(D), Mr. Ortiz-Castaneda requests the reports of all tests and examinations conducted upon any evidence in this case. This request includes any financial or other data that has been examined, or tabulated, or otherwise tested;

(3) **Brady Material.** Mr. Ortiz-Castaneda requests all documents, statements, agents' reports, and tangible evidence favorable to the defendant on the issue of guilt and/or which affects the credibility of the government's case. Brady v. Maryland, 373 U.S. § 83 (1963). Impeachment as well as exculpatory evidence falls within Brady's definition of evidence favorable to the accused. United States v. Bagley, 473 U.S. 667 (1985); United States v. Agurs, 427 U.S. 97 (1976).

(4) **Any Information that May Result in a Lower Sentence under the United States Sentencing Guidelines (U.S.S.G.).** As discussed above, this information is discoverable under Brady v. Maryland, 373 U.S. 83 (1963). This request includes any information that could affect any base offense level or specific offense characteristic under Chapter Two of the U.S.S.G. Also included in this request is any information relevant to a Chapter Three adjustment, a determination of the defendant's criminal history, or any other application of the U.S.S.G.;

(5) **The Defendant's Prior Record.** Evidence of prior record is available under Fed. R. Crim. P.16(a)(1)(B);

(6) **Any Proposed 404(b) Evidence.** Evidence of prior similar acts is discoverable under Fed. R. Crim. P.16(a)(1)(C) and Fed. R. Evid. 404(b) and 609. In addition, under Fed. R. Evid. 404(b), "upon request of the accused, the

- 3 -

- 08 cr 1170-L

1  prosecution . . . shall provide reasonable notice in advance of trial . . . of the
2  general nature . . ." of any evidence the government proposes to introduce under
3  Fed. R. Evid. 404(b) at trial.  Mr. Ortiz-Castaneda requests that such notice be
4  given eight weeks before trial in order to give the defense time to adequately
5  investigate and prepare for trial;

6  (7) **Evidence Seized.**  Evidence seized as a result of any search, either
7  warrantless or with a warrant, is discoverable under Fed. R. Crim. P.16(a)(1)(C);

8  (8) **Request for Preservation of Evidence.**  Mr. Ortiz-Castaneda
9  specifically requests again that any physical evidence that may be destroyed,
10 lost, or otherwise put out of the possession, custody, or care of the government
11 and which relates to the prosecution in this case be preserved.  This request
12 includes, but is not limited to, any "dispatch" or other tapes, samples used to run
13 any scientific tests, and any evidence seized from any third party.  It is
14 requested that the government be ordered to question all the agencies and
15 individuals involved in the prosecution and investigation of this case to
16 determine if such evidence exists, including disputed tapes, and if it does exist,
17 to inform those parties to preserve any such evidence;

18 (9) **Tangible Objects.**  Mr. Ortiz-Castaneda requests, under Fed. R.
19 Crim. P. 16(a)(2)(C), the opportunity to inspect and copy as well as test, if
20 necessary, all other documents and tangible objects, including photographs,
21 books, papers, documents, photographs, of building or places or copies of
22 portions thereof that are material to the defense or intended for use in the
23 government's case-in-chief, or were obtained from or belong to the defendant.
24 Also included in this request is the defendants A-File;

25 (10) **Evidence of Bias or Motive to Lie.**  Mr. Ortiz-Castaneda requests
26 any evidence that any prospective government witness is biased or prejudiced
27 against the defendant, or has a motive to falsify or distort his or her testimony.
28 Pennsylvania v. Ritchie, 480 U.S. 39 (1987); United States v. Strifler, 851 F.2d

- 4 -

- 08 cr 1170-L

1197 (9th Cir. 1988). Such evidence can include prior statements, business dealings, or actions;

(11) **Impeachment Evidence.** Mr. Ortiz-Castaneda requests any evidence that any prospective government witness has engaged in any criminal act, whether or not resulting in a conviction, and whether any witness has made a statement favorable to the defendant.  See Fed. R. Evid. 608, 609 and 613.  Such evidence is discoverable under Brady v. Maryland, supra.  See, United States v. Strifler, 851 F.2d 1197 (9th Cir. 1988) (witness' prior record); Thomas v. United States, 343 F.2d 49 (9th Cir. 1965) (evidence that detracts from a witness' credibility);

(12) **Evidence of Criminal Investigation of Any Government Witness.**  Mr. Ortiz-Castaneda requests any evidence that any prospective witness is under investigation by federal, state or local authorities for any criminal conduct.  United States v. Chitty, 760 F.2d 425 (2d Cir.) cert. denied, 474 U.S. 945 (1985);

(13) **Evidence Affecting Perception, Recollection, Ability to Communicate, or Truth Telling.**  Mr. Ortiz-Castaneda requests any evidence, including any medical or psychiatric report or evaluation, tending to show that any prospective witness' ability to perceive, remember, communicate, or tell the truth is impaired.  Mr. Ortiz-Castaneda also requests any evidence that a witness has ever used narcotics or other controlled substance, or has ever been an alcoholic.  United States v. Strifler, 851 F.2d 1197 (9th Cir. 1988); Chavis v. North Carolina, 637 F.2d 213, 224 (4th Cir. 1980);

(14) **Witness Addresses.**  Mr. Ortiz-Castaneda requests the name and last known address of each prospective government witness.  See United States v. Napue, 834 F.2d 1311 (7th Cir. 1987); United States v. Tucker, 716 F.2d 576 (9th Cir. 1983) (failure to interview government witnesses by counsel is ineffective); United States v. Cook, 608 F.2d 1175,1181 (9th Cir. 1979) (defense

1  has equal right to talk to witnesses).  Mr. Ortiz-Castaneda also requests the
2  name and last known address of every witness to the crime or crimes charged
3  (or any of the overt acts committed in furtherance thereof) who will not be
4  called as a government witness.  <u>United States v. Cadet,</u> 727 F.2d 1453 (9th Cir.
5  1984);

6  (15)  **Name of Witnesses Favorable to the Defendant.**  Mr. Ortiz-
7  Castaneda requests the name of any witness who made an arguably favorable
8  statement concerning the defendant or who could not identify him or who was
9  unsure of his identity, or participation in the crime charged.  <u>Jackson v.</u>
10 <u>Wainwright,</u> 390 F.2d 288 (5th Cir. 1968); <u>Chavis v. North Carolina,</u> 637 F.2d 213,
11 223 (4th Cir. 1980); <u>Jones v. Jago,</u> 575 F.2d 1164,1168 (6th Cir.), cert. denied, 439
12 U.S. 883 (1978); <u>Hudson v. Blackburn,</u> 601 F.2d 785 (5th Cir. 1979), cert. denied,
13 444 U.S. 1086 (1980);

14 (16)  **Statements Relevant to the Defense.**  Mr. Ortiz-Castaneda requests
15 disclosure of any statement that may be "relevant to any possible defense or
16 contention" that he might assert.  <u>United States v. Bailleaux</u>, 685 F.2d 1105 (9th
17 Cir. 1982);

18 (17)  **Jencks Act Material.**  Although this Court has ordered the
19 production of all statements that are discoverable pursuant to the Jencks Act,
20 Mr. Ortiz-Castaneda asserts that a verbal acknowledgment that "rough" notes
21 constitute an accurate account of the witness' interview is sufficient for the
22 report or notes to qualify as a statement under §3500(e)(1).  <u>Campbell v. United</u>
23 <u>States,</u> 373 U.S. 487, 490-92 (1963). In United <u>States v. Boshell,</u> 952 F.2d 1101 (9th
24 Cir. 1991), the Ninth Circuit held that when an agent goes over interview notes
25 with the subject of the interview the notes are then subject to the Jencks Act. The
26 defense requests pre-trial production of all Jencks material to expedite
27 cross-examination and to avoid lengthy recesses during trial;
28

- 6 -

- 08 cr 1170-L

1   (18) **Giglio Information.** Pursuant to Giglio v. United States, 405 U.S.
2   150 (1972), Mr. Ortiz-Castaneda requests all statements and/or promises, express
3   or implied, made to any government witnesses, in exchange for their testimony
4   or other assistance in this case, and all other information that could arguably be
5   used for the impeachment of any government witnesses;

6   (19) **Personnel Records of Government Officers.** Mr. Ortiz-Castaneda
7   requests all citizen complaints and other related internal affairs documents
8   involving any of the law enforcement officers who were involved in the
9   investigation of him, pursuant to Pitchess v. Superior Court, 11 Cal. 3d 531, 539
10  (1974). Because of the sensitive nature of these documents, defense counsel will
11  not be able to procure them from any other source;

12  (20) **Government Examination of Law Enforcement Personnel Files.**
13  Mr. Ortiz-Castaneda requests that the government examine the personnel files
14  and any other files within its custody, care or control, or which could be
15  obtained by the government, for all testifying witnesses, including testifying
16  officers. Mr. Ortiz-Castaneda requests that these files be reviewed by the
17  government attorney for evidence of perjurious conduct or other like
18  dishonesty, or any other material relevant to impeachment, or any information
19  that is exculpatory, pursuant to its duty under United States v. Henthorn, 931
20  F.2d 29 (9th Cir. 1991). The obligation to examine files arises by virtue of the
21  defense making a demand for their review: The Ninth Circuit in Henthorn
22  remanded for in camera review of the agents' files because the government
23  failed to examine the files of agents who testified at trial. This Court should
24  therefore order the government to review all such files for all testifying
25  witnesses and turn over any material relevant to impeachment or that is
26  exculpatory prior to trial;

27  21. **Notice and a Written Summary of Any Expert Testimony**
28

Under Rule 16(a)(1)(E), "[a]t the defendant's request, the government shall disclose to the defendant a written summary of testimony the government intends to use under Rules 702, 703 or 705 of the Federal Rules of Evidence during its case-in-chief at trial. This summary must describe the witness' opinions, the basis and the reasons therefore, and the witness' qualifications." Mr. Ortiz-Castaneda specifically requests the government give them a written summary and notice of any expert testimony that the government intends to introduce. This request includes any government agent who will testify to any opinion.

### III.
### THIS COURT SHOULD SEVER THE COUNTS

**A.     The Federal Rules of Criminal Procedure Require Severance in This Case.**

The issue regarding whether a "misjoinder of charges" exists here is a question of law for this Court to resolve and is reviewed *de novo* by the appellate courts.  See United States v. Sarkisian, 197 F.3d 966, 975 (9th Cir. 1999).

Federal Rule of Criminal Procedure 8(a) provides for the joinder of two or more offenses if the offenses are (1) of the same or similar character; (2) based on the same act or transaction; or (3) connected together or part of a common scheme or plan.  Fed. R. Crim. P. 8(a); see also United States v. Kinslow, 860 F.2d 963, 966 (9th Cir. 1988), overruled on other grounds by United States v. Brackeen, 969 F.2d 827 (9th Cir. 1992).  Thus, the Court must find that one of the conditions listed in Fed. R. Crim. P. 8(a) exist or sever the two counts.  Mr. Ortiz-

Castaneda is alleged to have committed three separate offenses (ten counts) on one date. Joinder of the two charges is legally incorrect and would unduly and unfairly prejudice Mr. Ortiz-Castaneda's ability to receive a fair trial; thus, infringing upon his due process rights.

Joinder of the two offenses fails the similarity requirements of Rule 8 because the two counts are not of "the same or similar character." The alleged violation in Count 1 is an assault on a federal officer. This is in contrast to Counts 2-9 where the violation centers on smuggling of aliens. Finally, Count 10 is a status crime, attempted entry by a deported alien.

Similarly, the counts are not "based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan." The alleged improper act relating to Count I is Mr. Ortiz-Castaneda's failure to present and declare the iodine. On the contrary, in Count II Mr. Ortiz-Castaneda's alleged criminal act was the actual importation of methamphetamine. Because the importation of iodine (absent a failure to present and declare the iodine) is not a violation of law, the Counts are based on different acts.

Similarly, the three separate types of counts are not connected through a common scheme or plan. To determine whether the Counts are sufficiently

- 9 -

- 08 cr 1170-L

connected together, the Court looks for a logical relationship between the offenses. Sarkisian, 197 F.3d at 975. Although allegedly committed close in time, the three groups of offenses are not connected. Therefore, severance is required under Fed. R. Crim. P. 8.

The law is clear that the validity of a Rule 8 joinder is based <u>solely</u> on the allegations in the indictment. See United States v. Terry, 911 F.2d 272, 276 (9th Cir. 1990) (emphasis added). While the broad policies favor joinder and the word "'transaction' is to be interpreted flexibly and 'may comprehend a series of related occurrences," the indictment must allege some commonality between the joined offenses. Id. In this case, the indictment completely fails to allege any commonality between the two offenses. The government has made no effort in the indictment to suggest the two counts are (1) of the same or similar character; (2) based on the same act or transaction; or (3) connected together or constituting a common scheme or plan. As a result, the counts are improperly joined and the Court must order a severance.

**B.    The Extreme Prejudice to Mr. Ortiz-Castaneda That Results from Joinder of the Counts Requires Severance in the Interest of Justice.**

If this Court does not find improper joinder of offenses per Fed. R. Crim. P. 8 as argued above, it should still sever the trials for the two charges in the indictment because of the extreme prejudice that Mr. Ortiz-Castaneda would

suffer if the offenses were tried together.  Rule 14 is captioned: "Relief from Prejudicial Joinder," and provides that if joinder "in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts . . . ."  Fed. R. Crim. P. 14(a).

If these counts are tried together, Mr. Castaneda will be forced to defend a status crime that may involve technical defenses.  Also, the prosecution of that crime will include proof of a deportation, which will be very technical.  Likewise, the defense of the other counts will likewise be unfairly prejudiced by a joint trial.  Thus, this Court should sever.

C.      **Precedent Supports Severance of These Two Distinct Offenses.**

In United States v. Lewis, 787 F.2d 1318 (9th Cir. 1986), the Ninth Circuit acknowledged that "[t]here is a high risk of undue prejudice whenever . . . joinder of counts allows evidence of other crimes to be introduced in a trial of charges with respect to which the evidence would otherwise be inadmissible."  Id. at 1321 (quotation and citation omitted).  Thus, the Court "recognize[d] that the danger that the jury's perception of the defendant will be adversely affected by the evidence of the prior crimes is so strong as to create a presumption favoring severance."  Id. at 1322.

This Court should rely upon the Ninth Circuit's consideration of improper joinder issues as addressed in Sarkisian and Bean v. Calderon, 163 F.3d 1073 (9th Cir. 1998). These cases indicate that severance of iodine charge from the attempted importation of methamphetamine charge is necessary.

In Sarkisian, the Ninth Circuit held that joinder in the same indictment of offenses of extortion and trafficking in stolen auto parts was error because there was "not a sufficient logical relationship between them" — it was "not an instance where one criminal activity naturally flow[ed] from separate criminal conduct." Sarkisian, 197 F.3d at 975.

One year earlier, in Bean, the Ninth Circuit reversed a conviction resulting from misjoined counts. In Bean, the petitioner was charged in state court with two separate murders that occurred three days apart. 163 F.3d at 1075-76. Over his objection, the trial court consolidated the two charges in one trial. Id. The Ninth Circuit held that trying the two charges together violated due process. Id. at 1083. It found there is a "high risk of undue prejudice whenever . . . joinder of counts allows evidence of other crimes to be introduced in a trial of charges with respect to which the evidence would otherwise be inadmissible." Id. at 1084 (quoting United States v. Lewis, 787 F.2d 1318, 1322 (9th Cir. 1986)). Further, the court recognized studies establishing "that joinder of counts tends to prejudice

jurors' perceptions of the defendant and of the strength of the evidence on both sides of the case." Id.  The court based its finding of prejudice on the facts that: (1) the evidence was not cross-admissible, and (2) the jury may have considered the two charges in concert as reflecting the defendant's modus operandi.

Accordingly, the court observed that the jury could not "reasonably [have been] expected to 'compartmentalize the evidence' so that evidence of one crime [did] not taint the jury's consideration of another crime," Bean, 163 F.3d at 1084 (quoting United States v. Johnson, 820 F.2d 1065, 1071 (9th Cir. 1987)), when the State's closing argument and the import of several instructions it heard urged it to do just the opposite. Id.  Thus, it found the jury instructions did little to lessen the prejudice from the joinder.  While the Court affirmed one conviction that was supported by "strong" evidence, it found conviction on the other murder, robbery, and burglary count violated due process and therefore, reversed. Id. at 1086.

Here, the evidence the different offenses would not be cross-admissible had the government chosen to charge them separately. The offenses do not have common physical evidence, except for — perhaps — the time they occured. Thus, like in Bean, the jury, even if instructed to do otherwise, could not compartmentalize the evidence as to each offense and would likely deduce guilt

from one offense from inadmissible evidence from the other. As a result, like in Sarkisian and Bean, misjoinder of the two importation charges here unquestionably would prejudice Mr. Ortiz-Castaneda by its "substantial and injurious effect or influence in determining the jury's verdict" as to each alleged charge. See United States v. Lane, 474 U.S. 438, 449 (1986).

## IV.
## THIS COURT SHOULD HOLD A FURTHER MOTIONS HEARING

Counsel for Mr. Ortiz-Castaneda has had to file motions in this case without the benefit of full discovery. Thus, this Court should set this case for an additional motions hearing after the government provides discovery. In particular, Mr. Ortiz-Castaneda has not seen the A-File, which is necessary to litigate 1326 motions; he has not seen the discovery related to any statement, which is necessary to litigate a statements motions; he has not seen discovery related to the identification process, which is necessary to litigate issues related to identification.

## V.
## CONCLUSION

For the foregoing reasons, this Court should grant the above motions.

Dated: April 15, 2008                    Respectfully submitted,


                                         /S/ Knut S. Johnson
                                    **Knut S. Johnson, Esq. for
                                         Mr. Ortiz-Castaneda**